So, Mr. Boundy, I should say first this is number 23, 2159 OpenSky Industries, LLC v. VLSI Technology. Go ahead. May it please the court, I'm David Boundy representing Appellant OpenSky and I begin by thanking everyone for allowing me to reschedule. I had a very bad week. This case involves a $413,000 attorney fee award. It fails under Goodyear, it fails under arbitrary capricious standard of State Street, and it fails under statutory authority. I'll start with Goodyear. Goodyear asks a decision maker to separate punitive sanctions from compensatory sanctions and the test there is to identify specific sanctionable conduct, compensable harm, and to explain how the misconduct caused the harm under a because of and solely because of standard. Okay, could I just ask you to back up a moment because a predicate question is what was the misconduct here? And if I understand what the PTO director has said, I think she says that there are three kinds of misconduct. One, pursuing the proceeding for the purpose of extorting money from VLSI. A second purpose is extorting money from Intel. And a third impropriety was offering to slow walk the proceeding. So which of those do you contend was an improper ground that the PTO found? Because we don't get to the Goodyear question until we find that there is some kind of misconduct. Your Honor, I think that will be the question you want to ask my colleague at the other table. That's my argument, is that there is no identification of misconduct that the director. So you're saying that your position is that all three of the things that I've identified, none of them is misconduct? The position is that the PTO took no consistent position from paper 102 to 126 to 147 to the briefs now. Each one's a moving target. I'll ask you a specific question. There are three allegations of misconduct. Do you dispute each of those? I dispute that the director made no finding of causation of any of them. What about paper 102? Paper 102, sure enough, found abusive process. But by paper 147 and the director's brief now, disclaims the initial filing was not misconduct. You bet. It's there in 102. The problem that I have reading the briefs and that you have is the one you brought up. There's no consistent position. And you're not answering my question. Did OpenSky behave improperly by seeking compensation from Intel? I'm going to challenge the premise there. The appealable issue is that there was no finding. You have to answer my question. You may not like the way it's framed, but answer my question. Was OpenSky's seeking compensation from Intel improper or not? We were open to settling with Intel, but that never happened. A portion of the verdict that was saved. Was that conduct improper or not improper? We didn't look at it that way. Maybe you didn't, but I'm asking you a question. Answer me. I'm sorry I can't answer that question because the issue is did they connect whatever conduct was improper, it was the director's burden to connect that conduct to the cause. You can't answer that question. I can't understand your argument. Either your position is that it was improper or that it wasn't improper. Which is it? That's not our position at all. Our position is let's give you the hypothetical for a moment that it was improper. The director's burden was to connect improper conduct to costs that VLSI bore because of that misconduct and solely because of change. This is basically a basic administrative law failure to explain case. That is your case, isn't it? Basically, you're saying that we should send this back because there's a failure to explain. That's a really tall order for you to be arguing because I find consistent through here, maybe not a volume or a separate tone, but I find sufficient, clear rationale as to that would support the director's actions, especially with respect to misconduct that occurred. Can we go through that? What specific misconduct? We'll look at paper 102. I cited that to you before. All right. In paper 102, the misconduct was initial filing and the email. But in later papers, she says, she disclaims that pre-filing conduct was misconduct. So paper 102, we have a Fox television Chenery problem that whatever the misconduct was in 102, by the end of the case, it's no longer misconduct. But because of the Knorr-Pennington argument, the patent office has dropped the allegation that the initial filing was misconduct. All right. So now we're left with only the email. But the email in paper 147 is the paper that reduces the conduct to a sanctions amount. But the email is never mentioned in 147. There's no showing. The email, all of ALSI had to do is say, we reject your offer. We're going home. That's the potential recoverable costs. But the review of misconduct, that's Cooter v. Gell and Blixith. Fees on fees are not compensable. And there's no explanation to connect misconduct to compensable fees by VLSI with a because of and solely because of explanation. And if you were to remand, we'd have a whole lot of things that had to be fixed. The first would be an identification of legal authority for the director to even begin this investigatory proceedings. The Administrative Procedure Act in 555C says agencies cannot conduct investigative proceedings unless authorized by law. So from the get-go, this was an improper proceeding. For abuse of process, the director has to pick a state that's not Pennsylvania, a state that has contact with the proceeding. It's not Pennsylvania. You're into a rebuttal time. Do you want to save it? I will save my time.  Mr. Mehron. Thank you, Your Honor, and may it please the Court. I want to pick up with Judge Dyke's questions about what was the misconduct here. And as Judge Dyke noted, there are three broad categories that were identified early in the proceeding. The first was the filing. The second were the outreach to Intel seeking a settlement. And the third was the other offers to VLSI and to Intel that amounted to an attempt to undermine the proceeding. Slow walk the proceeding. Slow walk undermining. Let's assume for the moment that it was misconduct to try to secure money from Intel, that it was misconduct to offer to slow walk the proceeding. I'm concerned about the first category, which is the idea that they pursued the proceeding to extract money from VLSI. And it seems to me that under Norah Pennington, since we're dealing with a compelling merit petition, that it's difficult to see how they could be sanctioned for initiating that proceeding and pursuing settlement under the various cases. Absolutely, Judge Dyke. So the first thing that I would say is I would point your honor to Appendix 40, where this was in Paper 102, where the former director stated that each aspect of OpenSky's conduct, discovery of misconduct, violation of an express order, abuse of the IPR process, and unethical conduct, taken alone, constitutes sanctionable conduct. You flagged one of those categories, which was the filing. And if you turn to the later paper, which is Paper- Oh, it's not the filing. It's really the idea that they pursued the proceeding. Because as I understand it, she said that it's based on post-filing misconduct. Correct. And I was just about to point you to that in the Appendix 134, where the director said, I am not imposing sanctions because of the manner in which OpenSky conducted itself. Apologies. I am not sanctioning OpenSky based on whether it filed a meritorious petition. I'm imposing sanctions because of the manner in which OpenSky conducted itself after the petition was filed. Okay, but why wouldn't the Noor-Pennington Doctrine protect continuing a meritorious proceeding with a motive to extract money? That's the problem I'm having. The reason would be that the types of misconduct that the director found sanctionable were not run-of-the-mill, ordinary litigation conduct. It was not the filing of a complaint. It wasn't petitioning the government for redress of a grievance. And it wasn't the ordinary run-of-the-mill settlement negotiations that take place in ordinary litigation. As to the conversations with Intel- The PTO's position, I assume, is that there's nothing wrong with a petitioner seeking to secure payment from the patentee for dropping the proceeding, right? I wouldn't say that there's nothing wrong, but is that type of behavior within the immunity of Noor-Pennington? Very likely. What I think the former director noted, and this is at Appendix 77, is that this was a very peculiar settlement negotiation. The former director used the phrase double-dealing, as OpenSky was speaking with both VLSI and Intel, trying to seek compensation from both sides. And if you look at Appendix 68, and this is where the email is reproduced, you see what the settlement offers, the so-called settlement offers, entailed. It entailed a party refusing to pay expert for time at a deposition so the expert does not appear. It was an attempt to undermine, not just slow walk, but undermine and sabotage the integrity of the proceeding. And the director made findings in accordance to what they're saying, right? Yes. Are those expressed in Paper 127? Yes. Suppose hypothetically that we were to conclude that continuing the proceeding for the purpose of extracting payment from VLSI was protected by Noor-Pennington, but that the other activity, which I guess would include refusal to respond to the discovery, the effort to extract payment from Intel, and the effort to undermine the proceeding, that those were improper. What do we do then? I think in that case you would affirm, because as I directed to you in Appendix 40, the director in that paper, she stated that each aspect of OpenSky's conduct itself constituted sanctionable misconduct. Yeah, but under the cases, the attorney's fees have to be found to be the but-for cause. The misconduct has to be the but-for cause of the attorney's fees. So why, under those circumstances, if some of this is misconduct and some isn't, we would have to remand, wouldn't we, to ask the director to allocate the fees? I don't believe so for two reasons. I think the first reason is because when you look at what the director found and what she did, she looked at whether not just OpenSky had an intent to extort VLSI or Intel. She looked at what they did. Did they carry out that plan? Did they engage in post-filing sanctionable misconduct? And she found, as Judge Reyna noted, she found that they did. And so from the point where OpenSky executed a plan, not just Nora Pennington immune filing of a petition with a potentially purpose to extort, but when OpenSky carried that out, including emailing a party and offering to undermine the proceeding, at that point VLSI engaged in raising that issue to the director's attention. And through the director review process, through the presidential order panel process, and those legal expenses the director determined when she reviewed them, they would not have occurred but for OpenSky not just having an improper purpose behind its filing, but acting on it and engaging in misconduct before. If having the improper purpose is protected by Nora Pennington, so is acting on the purpose, right? I wouldn't agree with that. I think because taking deliberate steps, including offering to undermine the proceeding, to not pay it. I'm not talking about that. I'm talking about just pursuing the proceeding with the idea of extracting money. Well, I agree with you that pursuant to Nora Pennington, the act of filing the petition with the intent to extort money from a patent owner, that in and of itself may be covered by Nora Pennington. But when you go beyond that and you file the petition and then you begin communicating with parties and you begin what the director called double dealing, and when you begin making offers to undermine and throw the proceeding, at that point it changes into nonimmune behavior. And I'd point you to Appendix 69 where the director said, initiating a legal proceeding to deliberately sabotage for money, including offering to violate the duties of candor and good faith ode to the board, amounts to an abusive process. And so, yes, this was the earlier paper where the director was at that time talking about initiating proceedings. But the director also threw out, and it's in this paper and it's in paper 127, offering to violate the duties of candor and good faith ode to the board. That amounts to an abusive process. And so, yes, I agree you can file a petition with an improper purpose in your mind, but if you take active steps to violate the duties of candor and good faith to the board. Put that aside. Suppose that didn't happen. Suppose all they did was continue the petition with the purpose of extracting money. That would still be protected by Norah Pennington, if that's all they did. Yes, I believe it would, yes. Okay. But that's not the facts of the case that we have here. Here we have the double dealing, the settlement outreach to both sides, and we also have, as the director noted repeatedly. So are you saying that post-filing conduct is protected by Norah Pennington? I'm not. I was answering Judge Dyke's question, which if the only conduct being looked at was the filing of the petition and there was no other ancillary conduct. What I asked you about was the filing of the petition and then continuing with the proceeding. And it was solely to extract money from VLSI. It had no other purpose. Let's just hypothetically assume it had no other purpose. Was continuing the proceeding an improper act? I don't know if there's case law directly on point, but my understanding of the case law, I haven't seen a case that says that a party that files a complaint for an improper proceeding cannot maintain that proceeding. The facts here that set this apart. It would seem to be protected by Norah Pennington to continue the proceeding, right? I would think so based on the cases I've seen, but that's not what we have here. What we have here is. Does Norah Pennington focus on conduct, isn't it, and not intent? When you're talking about Norah Pennington, you're talking about conduct that happens before filing and after filing. I think when we're talking about Norah Pennington, we're talking about conduct that's attendant to ordinary litigation. What normally happens in a district court proceeding, the service of discovery, responses to discovery, the filing of dispositive motions. I haven't seen a case. If you do that, then you run the risk that Norah Pennington runs throughout the entire proceeding. If it's initiated in bad faith, then all subsequent actions could be viewed as being in bad faith. So this is again where the cases have talked about settlement, and that's where Norah Pennington has often come up, is if a party initiates a legal proceeding for an improper antitrust purpose and then potentially seeks a settlement, is that conduct immune? They say it's protected, the courts. The courts say it's protected, but only if it's a run-of-the-mill ordinary course routine attendant to litigation settlement negotiation. That is not what we have here. What we have here is something that's outside the bounds of ordinary litigation. You have a party double-dealing and seeking both sides and making offers to undermine and refuse to pay experts to sabotage the proceeding, which the director in Paper 102 viewed reasonably as an offer to violate the duties of candor and good faith. And I think the cases are consistent that Norah Pennington does not immunize a party from sanctions for litigation misconduct, and here we have post-filing litigation misconduct, and that is the conduct that the director found sanctionable. Any further discussion? Okay, thank you. Mr. Lamkin. Thank you, and may it please the Court. I'd like to make three points about the misconduct in this case, the misuse of IPRs, the false statements, and the flagrant violation of discovery order, something that hasn't gotten a lot of attention. First, as the director found, and this is in Appendix 61, because OpenSky disobeyed the discovery orders, it's not, I'm going to quote, not possible to ascertain whether or not OpenSky acted as a shell for other entities seeking to challenge the 759 patent. As a newly formed entity seemingly created solely for filing this IPR, OpenSky must have had some source of undisclosed finding. But because of the unrepentant violation of discovery orders, we still don't know what shenanigans went on, what's behind this filing. Second, if I can turn briefly to the Knorr-Pennington issue. Even if we were to assume that it's fine to file one of these lawsuits for the purpose of extracting money from the winner of a verdict, to try and say, you know what, you want to keep your verdict? You've got to share it with me. Even if we were to assume that, the director doesn't have to entertain those types of filings. And it is misconduct to the very least. Let's talk about the contact with Intel. Why was it improper? Let's assume that all that OpenSky did was to file a petition and try to get VLSI to pay them to abandon it. Would that be within the protection of Knorr-Pennington? So the filing itself is within protection. Continuing. And continuing and other filings might. But what happens, and this is restatement section 862, comment A. It says, the gravenance not the wrongful procurement of legal process or wrongful initiation. And it goes, but misuse for any purpose for which it was not designed. The subsequent misuse of process, typically some form of extortion. And since you are not supposed to be trying to get money out of strangers through IPRs, it is a misuse to try and get money out of strangers through an IPR or try and get yourself a cut of the verdict. But even apart from that, even if it's okay, and I think the PTO found otherwise, and so this is a remand issue, even if it were okay, you can't misrepresent your motive. And that's exactly what happened here. If you look, they asserted its interest is in the integrity of the patent system, that's Appendix 74. And it never disclosed its true motive, which it finally confesses today, that was the sole improper purpose of extracting money, pages 74 and 76 of the appendix. And having not revealed its motive, that is misconduct, and it is sanctional misconduct. And for that reason, at least that reason, this Court, these sanctions should stand, or at least they should be remanded for further proceedings. Well, let's assume for the moment that there are three kinds of misconduct here that could be sanctioned, that the effort to extract a payment from Intel, the effort to slow walk the proceeding, and the failure to respond to discovery, that those are misconduct. But the fourth kind of alleged misconduct, that is continuing the proceeding with an effort, for an effort to extract money from VLSI, is protected by North Pennington. Let's just assume that. You may not agree with that, but let's assume. Yeah, I will not agree with it, but yes, I will assume it for the sake of argument. What do we do if that's what we concluded? You remand. Because that simply means that if you're not sure of all the bases on which the sanctions order stands, the Director is amply able to say, I will now set aside the one thing the Court has told me I'm not allowed to consider and come up with an answer. I think, frankly, the Court could affirm anyway, but I think the answer here on the safe one is unless you're absolutely certain that it would be the exact same result, you remand. But I think I would disagree and disagree strongly that there is the notion that you can actually file an IPR for the purpose of going to a total stranger. We have no involvement in the litigation, no monetary interest, and you can file that IPR to try and extract money. If you remand, what would we tell the Director to do? The Director would be to reconsider sanctions and reconsider the matter in light of the proper law, which this Court would announce to it under the API. How would this consideration be different than what we have already? Oh, I think you would have excised from it the fact that there is – basically would have to restate it's improper to file an IPR for the purpose of going after and trying to get money out of Intel, excluding VSI, something I disagree with, and then it would go through and say, what were the things that caused harm as a result of that improper motive and improper actions based on that motive? You wouldn't actually look at the filings. Do you think the Director should have done that already? I think this Court could find that any error in that respect was harmless, but I think there's a pretty strong presumption that once this Court finds error, though an ordinary rule under, I think it's Idaho power, is that it goes back to the agency. The Court's job is done having unearthed the error, and the agency must make a determination anew. That's the ordinary procedure, unless the Court has a very sure answer that it can't possibly be harmful. If there are no further questions, I thank the Court for its time. Mr. Boundy. I think I'd agree with Mr. Myron that it's actions, not words, that matter. After all of these discussions and after VLSI declined the offer, OpenSky pursued the IPR, paid the expert, went through, followed all the steps. Once the offer was declined, there was no slow walking. If actions, not words, matter, then there was no misconduct. Second, the words double dealing have been mentioned. OpenSky wanted to do a deal with Intel. Intel wouldn't pick up the phone. It was only after months of trying to talk to Intel, the phone rang, and it was VLSI. The offer of $750,000 conditioned on somehow the IPR not going forward, that was VLSI's offer. OpenSky memorialized VLSI's offer in that email, added a few glosses about, of course, once you settle, you don't pay an expert anymore. VLSI didn't come in. OpenSky didn't file from day one expecting to sell to the highest bidder. Now, if you're remanned, then that might be what you get. Further, there's this concern about discovery misconduct. Absolutely, a party can object to improper discovery requests. Here, the director has no authority to sua sponte require discovery. The Administrative Procedure Act, 5 U.S.C. 555 C, objecting to discovery for the first time is never misconduct. What always happens is we get a ruling on the discovery and then go forward. If you jam up the discovery after a second request, yes, that's misconduct. But we never got that far because the director jumped to conclusions, never gave anyone a second chance to work within a, to cure a discovery requirement that had been fully considered. Okay, I think we're about out of time. All right. And the last would be, I'd just like to contrast our case. All right. Before we conclude, does Judge Lynn have any questions for any of the counsel? No, thank you. I've been listening carefully and I appreciate the arguments and the questions posed by my colleagues. Okay, thank you. Thank all counsel, the case is submitted.